Larry E. DOERNER, Appellant,

v.

STATE of Indiana, Appellee.

No. 385S128.

Supreme Court of Indiana.

Dec. 3, 1986.

John F. Davis, Mary Jane Humphrey, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from a conviction of murder, I.C. § 35-42-1-1. A jury tried the case. Appellant Doerner received a sentence of sixty years.

Appellant raises seven issues on appeal: (1) whether the trial court erred in admitting into evidence his inculpatory written and taped statements and his signed Miranda waiver form; (2) whether the trial court erred in admitting into evidence an allegedly inflammatory and prejudicial photograph of the victim; (3) whether the trial court erred in sustaining an objection on hearsay grounds to a question posed to witness Frields; (4) whether the trial court erred in permitting the State to ask a leading question to State's witness Hawley; (5) whether the trial court erred in permitting the State's expert witness to testify about the cause of the victim's injuries; (6) whether there was sufficient evidence to support his murder conviction; and, (7) whether the trial court erred in imposing an aggravated sentence.

These are the facts from the record which support the determination of guilt. The victim, Walda Daniels, was a thirteen month old baby girl. On February 4, 1984, appellant brought her to the emergency room of Deaconess Hospital in Evansville. She had a pulse, but she was not breathing. An X-ray revealed a skull fracture and an examination of her eyes indicated severe brain damage. She languished in the hospital for two days until brain death oc-

curred. Thereafter, the life support systems were disconnected.

She died from multiple blows to the head, abdomen, and buttocks. These blows induced internal hemorrhaging in each of these areas of her body.

Appellant admitted to police and at trial that he had shaken the victim, and in the process, her head hit a door jamb. In addition, he admitted to beating her on the buttocks in the midst of a rage.

## I

Appellant argues that the trial court erred in admitting into evidence his inculpatory written and taped statements and his signed Miranda waiver form because the police obtained them after he asserted his right to counsel.

On July 18, 1984, appellant moved to suppress the written and taped statements and the signed Miranda waiver form. On July 24, 1984, the trial court held a hearing on the motion to suppress, and it entered its findings of fact and conclusions of law. Appellant made timely objection at trial to the admission of the exhibits containing the challenged evidence. He also included the issue in his Motion to Correct Errors.

The Fifth and Fourteenth Amendments to the United States Constitution secure to each citizen the right to the presence and advice of counsel during custodial interrogation by the police. *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. A confession of guilt procured from a subject during custodial interrogation is not admissible in a trial of criminal charges in the absence of proof beyond a reasonable doubt that counsel was present or the right thereto was voluntarily and knowingly relinquished prior to the commencement of the interrogation. *Moore v. State* (1984), Ind, 467 N.E.2d 710; *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. When the right of counsel is asserted during questioning that process must cease, and a confession procured by interrogators thereafter is *per se* inadmissible in the absence of a new waiver of

counsel evidenced by proof that the suspect initiated the resumption of questioning. *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. The accused's initiation of a dialogue with the police does not suffice ex propio vigore to show a waiver of the right to counsel. A separate inquiry to determine whether the accused knowingly and intelligently waived his right is required. *Oregon v. Bradshaw* (1983), 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405.

The evidence that supports the trial court's ruling is as follows. On February 22, 1984, at 12:30 p.m., the police arrested appellant and his wife at their home. The police advised them of their rights. Appellant requested an attorney; consequently, the interrogation ceased. Subsequently, appellant was subjected to the booking process. During the booking process, appellant and his wife requested to talk to each other. The police allowed them to do so for about fifteen minutes. Thereafter, Officer Brown attempted to take appellant back to resume the booking process. Appellant resisted and began to ask questions. Officer Brown informed him that he could not answer his questions because he had asserted his right to an attorney. At that point, Officer Brown read a waiver of rights form to appellant, and appellant signed it. Then, appellant gave the statements which he sought to suppress.

The trial court did not err in its ruling because it is clear that appellant initiated the questioning and that he knowingly and voluntarily waived his right to counsel.

## II

Appellant argues that the trial court erred in admitting into evidence State's Exhibit # 4, a photograph of the victim, because it was inflammatory and prejudicial. He timely objected at trial. He also included the issue in his Motion to Correct Errors.

"When photographs are demonstrative of testimony being presented by a witness, they are generally admissible. 'Al-

though the photographs may depict gory, revolting or inflammatory details of the crime when presented to the jury, this is not a sufficient basis for excluding such evidence.' *Wilson v. State* (1978), 268 Ind. 112, 116, 374 N.E.2d 45, 48. The relevancy of the photographs may be determined by inquiry as to whether a witness would be permitted to describe verbally the objects photographed."

*Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228, 1237.

■ Here, the pathologist, who conducted the autopsy, testified that the photographs were necessary to demonstrate the nature and the extent of the victim's injuries. Consequently, the trial court did not err in admitting into evidence State's Exhibit # 4.

## II

Appellant argues that the trial court erred in sustaining an objection to a question he posed to witness Frields. He claims the answer sought falls under an exception to the hearsay rule. The pertinent part of the record is set forth here:

> Q. Did she ever tell you that she seen Walda throw herself down in the bed when she would get mad and wouldn't want to go to bed?
>
> Mr. Zoss: I am going to OBJECT. That is hearsay and also calls for a conclusion as to her truthfulness.
>
>     *     *     *     *     *     *

By The Court: I will sustain the objection.

"Hearsay evidence is testimony in court or written evidence, of a statement made out of court, such statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter." McCormick, Evidence, § 225 (1954).

*Indianapolis Newspapers, Inc. v. Fields* (1970), 254 Ind. 219, 259 N.E.2d. 651, 673. The rule applies to written as well as oral statements, and relates to the competency of matter and not its relevance. It

".. excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to the truth of the matter asserted." 6 Wigmore, Evidence § 1766 (3d. ed. 1940). *Indianapolis Newspapers, Inc. v. Fields, Inc, supra* [259 N.E.2d] at 674. The rule applies to statements of fact which can be considered true or false. If the questioned utterance is offered to prove the fact of the utterance and not offered to prove the truth of the facts asserted, then there is no hearsay. The fact of the utterance may safely rest for its evidentiary value upon the credibility of any witness who may have heard or read it and testifies to it in court. The rule guards against fact asserted in an utterance because it rests for its evidentiary value, not upon the credibility of any witness who may have heard it, but upon the actual asserter who is absent from the trial. Hearsay evidence may nevertheless be admissible at trial under exceptions, the basis for which relates to the existence of adequate substitutes for cross-examination of the asserter.

*Connell v. State* (1984), Ind., 470 N.E.2d 701, 705–706; See also *Harvey v. State* (1971), 256 Ind. 473, 269 N.E.2d 759.

Here, the statement was made out of court. The statement was offered as an assertion to prove the truth of the matters asserted therein; consequently, it was hearsay. However, in spite of the statement's hearsay character, appellant argues that the statement should have been allowed under the *hearsay exception* enunciated in *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482. There, the Court held that the hearsay rule does not prevent the admission of evidence of an out-of-court assertion of fact when the declarant is present in court and subject to cross-examination concerning the assertion. See *Patterson, supra*, 324 N.E.2d at 484; and Miller, Indiana Evidence § 801.401 p. 109. Although there is some debate, the *Patterson* rule is best characterized as a *hearsay exception* by reasoning that the actual opportunity for cross-examination and the adequate substitute for cross-examination are

equivalent. Here, the statement could have been admitted into evidence because the out-of-court declarant was present in the court and subject to cross-examination.

■■■ However,

"Although we have held that it is not error to permit hearsay evidence to be considered as substantive evidence if the requirements of *Patterson* were met, it does not follow that hearsay not yet admitted is rendered admissible as substantive evidence simply because those requirements can be met. If the out-of-court declarant is available when the evidence is offered, there is no need to wander from the traditional hearsay proscriptions."

*Gaunt v. State* (1983), Ind., 457 N.E.2d 211, 215. It is within the trial court's discretion to decide whether a particular statement should be admitted into evidence when the out-of-court declarant is available. The full content of witness Frield's answer is not available. Consequently, it is impossible to accurately discern if the trial court abused its discretion. Nevertheless, appellant elicited from witness Doerner the precise answer he attempted to elicit from witness Frields:

Q. What would you do when you would put her in her bed and she didn't want to go to bed?

A. She would be standing there and you tell her to lay back and she wouldn't sit down, she would just more or less throw herself back.

Q. She would throw herself down in the crib?

A. Yes.

Q. Did she ever get bruises that you know of.

A. Yes, once.

Consequently, the possibility that appellant suffered any harm was remote.

### IV

■■ Appellant argues that the trial court erred in permitting the State to ask a leading question to State's witness Hawley.

The pertinent part of the testimony is set forth here:

Q. How about a fist in the buttocks? Do you have an opinion as to an open hand or fist in regard to the buttocks?

A. I ...

Mr. Davis: I think I will OBJECT to the form of the question, your Honor. It indicates to the jury that this is the only two possible things to consider, that they were either produced by one or the other. I object to the form of the question.

BY THE COURT: OVERRULED

A. It is unlikely that a relatively small surface area such as a closed fist would produce the injury to the buttocks. It is more likely to be a wilder (sic) surface area.

"It should be noted that a leading question is one which 'suggests to the witness the answer desired', *Snyder v. Snyder* (1875), 50 Ind. 492, at 494; 3 Wigmore, Evidence (Chadbourn Rev. 1970), § 769, at 155; 'indicates to the witness the real or supposed fact which the examiner expects and desires to have confirmed by the answer', 4 Jones on Evidence (6th Ed.1972), § 24:11, at 93; is in the form of an assertion of fact, *Cook v. State* (1921), 191 Ind. 412, 133 N.E. 137; or which, embodying a material fact, admits of a conclusive answer in the form of a simple 'yes' or 'no'. *DeHaven et al. v. DeHaven et al.* (1881), 77 Ind. 236. However, the mention of a subject to which a witness is desired to direct his or her attention is not considered to be a suggestion of an answer. *DeHaven et al. v. DeHaven et al., supra.*"

*Starks v. State* (1975), 163 Ind.App. 639, 325 N.E.2d 855, 856; see also McCormick, Evidence § 6, at 8 (2d ed. 1972).

Although it is normally inappropriate to utilize leading questions in the direct examination of a witness, a trial court may, in its discretion, permit the use of such questions. A trial court's determination in this regard is reviewable on appeal only for an abuse of that discretion.

*Shipman v. State, supra* (1962), 243 Ind. 245, 183 N.E.2d 823, cert. denied, 371 U.S. 958, 83 S.Ct. 515, 9 L.Ed.2d 504. The witness' testimony indicates that he did not distort his testimony in order to fit it into the categories posed by the question.

### V

■ Appellant argues that the trial court erred in permitting the State's expert witness to testify allegedly outside of his area of expertise. The pertinent part of the testimony is set forth here:

> Q. ... As far as probabilities go, do you have an opinion as to the probably (sic) cause of the abdominal injuries?
>
> By Mr. Davis: ... I think I am going to OBJECT. We are getting into the realm of physics. I don't think he is qualified as an expert in this type of opinion.
>
> By Mr. Zoss: Mr. Davis opened the door.
>
> By the Court: OVERRULED

Appellant claims that the State's expert witness had been qualified as a forensic pathologist and not as an expert in physics. Appellant's argument is not sustained. It is particularly within the realm of the forensic pathologist's expertise to determine the cause of death. The fact that this determination may involve considerations of physics such as the analysis of falls, blows, pressure, etc. does not remove it from the parameters of the forensic pathologist's expertise.

> The medicolegal autopsy is a specialized type of autopsy performed in the public interest, ideally by trained "forensic pathologists." The forensic pathologist is a licensed physician who, following an internship and standard training in the postmortem examination of individuals who have died in hospitals following medical therapy, spends further time training in one of several large medical centers to learn the skills required in the investigation of persons dying without medical attendance or under violent, unusual, or suspicious circumstances...."
>
> The medicolegal autopsy seeks to discover the identification of the decedent, *as nearly as possible the time and place of his death, the exact cause of his death, and in cases of violent death the circumstances and manner in which the fatal injuries were sustained.* These autopsies frequently are involved in identifying the person and instrument responsible for the death" Lawyer's Medical Encyclopedia Rev. Vo. 4 § 32 A. 1 & 2, pp. 800–801.

### VI

Appellant argues that there was insufficient evidence to support his murder conviction.

In reviewing sufficiency claims, we do not weigh the evidence nor resolve questions of credibility, but we look to that evidence and the reasonable inferences therefrom which support the verdict. *Glover v. State* (1970), 253 Ind. 536, 255 N.E.2d 657. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Fair v. State* (1969), 252 Ind. 494, 250 N.E.2d 744.

■ The victim had been brutally beaten. Internal hemorrhaging had resulted from blows to the abdomen and to the buttocks. The abdominal blows were life threatening in themselves. The victim had severe head injuries which included a skull fracture. Appellant admitted beating the victim and hitting her head against a door jam. The severity of these injuries, when viewed in light of appellant's admission, is sufficient to support the inference beyond a reasonable doubt that appellant knowingly killed the victim.

### VII

■ Appellant argues that the trial court erred in imposing an enhanced sentence. Specifically, it is claimed that the trial court employed an improper circumstance as an aggravator. The argument is based on the trial court's finding as an aggravating circumstance that the autopsy disclosed

semen in the victim's mouth. Appellant maintains that the jury's acquittal of him on the charge of felony murder, involving criminal deviate conduct, amounted to a finding that the semen's presence in the victim's mouth was not the result of criminal deviate conduct.

This argument is not sustained. The jury verdict on the felony murder charge is not necessarily a finding that appellant did not commit criminal deviate conduct. The jury verdict is also consistent with a finding that appellant committed criminal deviate conduct but that the victim was not killed during the course of the criminal deviate conduct. Furthermore, the trial court was not required to accept appellant's explanation as to how the semen got into the victim's mouth. The circumstantial evidence indicated that appellant targeted the infant as a source of sexual stimulation in the same series of events in which he targeted her for this severe beating; therefore, the trial court did not err in employing it as an aggravating circumstance.

Nevertheless, the trial court found other aggravating circumstances which could have independently supported the aggravated sentence i.e. the fact that the victim was thirteen months old and was unable to defend herself and the fact that appellant withheld information from the victim's doctors.

The trial court's statement of reasons adequately justifies the imposition of the aggravated sentence.

The conviction is affirmed.

GIVAN, C.J., and PIVARNIK, SHEPARD and DICKSON, JJ. concur.