Jerry MONTGOMERY, Appellant,

v.

STATE of Indiana, Appellee.

No. 45S00–8610–CR–924.

Supreme Court of Indiana.

April 26, 1988.

Daniel L. Bella, Appellate Public Defender, Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder for which he received a sentence of forty (40) years.

The facts are: On November 2, 1985, while visiting the home of his father's former girl friend, appellant, who was carrying a .357 magnum handgun, stated his intention to kill his father, Floyd Montgomery, Sr., who had shot appellant during an argument in 1983. Around 5:00 p.m. the following day, the elder Montgomery was talking on the telephone with a close friend when he asked her to "hold on;" she then heard the sound of a door opening followed by "a loud bang noise" and a dial tone. Approximately one hour later, Chester Alfred, a friend of appellant, returned home from church to find appellant, armed and intoxicated, waiting for him. They walked to the residence shared by appellant and his father where they discovered the latter's body sprawled on the couch with gunshot wounds in the head and chest. To avert suspicion, appellant gave his handgun to Alfred, who went back home. Appellant then telephoned the police. A ballistics analysis revealed that a bullet recovered from the wall behind the decedent's couch had been fired from appellant's handgun, which had been recovered on the ground next to Alfred's house.

Around 11:00 p.m. that same night, appellant was taken into custody and informed of his *Miranda* rights. He denied any knowledge of his father's shooting and refused to make a statement. The following day, November 4, 1985, Darnell and Floyd Montgomery, Jr., went to visit appellant at the Gary Police Department Detective Bureau. They were seeking information about their father's death from appellant because he had resided in the decedent's home. Detective Michael Valsi allowed only Floyd Jr. to talk to appellant because Darnell seemed too upset. For security reasons, Detective Valsi checked in on the brothers from time to time. During one of these checks, he was informed by appellant and Floyd Jr. that the former desired to make a statement. He was informed of his rights and a waiver form was completed. Appellant then confessed that after his query regarding some disputed insurance forms was ignored, he shot his father once; and after drinking a beer or two, he shot his father again. He sat down on the coffee table in front of the couch and drank four or five more beers while gazing at his father lying on the couch; then he "apologized to him talked to him and touched him." Appellant then walked over to Alfred's house.

■ Appellant contends the trial court committed fundamental error in admitting into evidence his confession, which he argues resulted from improper threats, coercion, and inducements and thus was not voluntary. After his arrest, appellant declined to make a statement to police until visited by his brother, Floyd Jr. who testified he "told him if he stuck with the same lie about him not doing it, he would probably end up getting death for lying rather than telling the truth about the matter." Appellant claims Detective Valsi "fed" information to Floyd Jr. concerning the status of the homicide investigation, including the ballistics evidence implicating appellant and his continued silence. At trial, appellant moved to suppress his statement; at the hearing on the motion, his counsel argued that Floyd Jr. "acted as an agent of the Gary Police Department in doing what they could not do." Counsel inferred from Detective Valsi's remarks to Floyd Jr. that "Officer Valsi made use of Floyd Montgomery to get a statement from Jerry Montgomery." The trial court apparently adopted the State's point of view that Floyd Jr. was not acting as an agent of the police because he visited appellant on his own initiative with the intention of getting a statement from him.

In determining whether the State has met its burden of proving the voluntary nature of the defendant's statement, we look to the evidence most favorable to the trial court's ruling and to any uncontradicted evidence to the contrary. The trial court will be affirmed if its ruling is supported by substantial evidence of probative value. *Graves v. State* (1986), Ind., 496 N.E.2d 383. However, we will neither reweigh the evidence nor rejudge the credibility of witnesses. *Bailey v. State* (1985), Ind., 473 N.E.2d 609. In the case at bar, there is nothing in the record to suggest that Floyd Jr. was acting as an agent of the police. Rather, the evidence supports the conclusion that he was a concerned family member attempting to ferret out the cause of his father's death; he testified that no one had made any threats or promises to induce him to influence appellant to confess. The fact that it was appellant himself who informed Detective Valsi that he wished to make a statement and then signed a written waiver form acknowledging the relinquishment of his right to remain silent also supports the trial court's ruling that the confession was made voluntarily. The trial court did not err in admitting appellant's confession into evidence.

■ Appellant, in a "Petition for Writ of Certiorari" and supporting "Affidavits" filed *pro se* concurrently with his direct appeal by counsel, contends he was denied effective assistance of counsel because, *inter alia*, trial counsel neglected to raise an intoxication defense. Although this issue was not raised by appellant's court-appointed appellate counsel, we have examined the papers appellant has filed *pro se* and have examined the record in this case in connection therewith. Appellant claims that he not only was intoxicated from the ingestion of alcohol but that he also was adversely affected by drugs he was taking to lessen pain resulting from an accident in which a piece of steel had lodged in his eye. He argues that the combination of the alcohol and the drugs placed him in such a state that he should not have been held accountable for the shooting of his father. While it is true that intoxication to such a degree as to prevent the forming of intent is available as a defense, *Snyder v. State* (1986), Ind., 500 N.E.2d 154, such a defense will not prevail if evidence shows that appellant had the ability to perform tasks such as attempting to hide his crime, to give instructions to others, or to take himself from place to place immediately following the crime. *Terry v. State* (1984), Ind., 465 N.E.2d 1085.

■ In the case at bar, both in appellant's statement to the police and his testimony on the witness stand, it is clearly demonstrated that he had a very lucid recollection of the occurrences both before, during, and after the shooting of his father. Appellant stated he fired the shots because he was angry at his father for taking papers he was using to attempt to get treatment for his eye, and his father was not cooperating with him in his attempt to get such treatment. Appellant

told how, after he fired the first shot, he drank some beer before firing a second shot into his father's body, then went to a neighbor's house and returned home with the neighbor to find his father's body where he feigned lack of knowledge of the situation. His gun was given to the neighbor for secretion; he called police following the "discovery" of his father's body then waited for and admitted the police to the home and discussed the shooting with them. Detective Valsi testified that appellant had been drinking, but he did not appear to be drunk. Appellant's trial counsel was faced with a situation wherein his client had made a full confession concerning the shooting. It was obviously his choice to attempt to have the charge reduced to manslaughter due to appellant's condition of anger. He was within the bounds of counsel's discretion in choosing not to invoke a defense of intoxication which under the facts and the case law of Indiana was doomed to fail. This Court will not declare counsel incompetent because of a choice of strategy in the handling of a lawsuit. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Nadir v. State* (1987), Ind., 505 N.E.2d 440. Even after consideration of appellant's *pro se* papers, we find no reversible error in this cause.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.