Timothy SCHICK, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 79A04–8906–CR–236.

Court of Appeals of Indiana,
Fourth District.

April 23, 1991.

Rehearing Denied June 3, 1991.

**920**

Caroline B. Briggs, Flora, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

CONOVER, Judge.

Defendant–Appellant Timothy Schick appeals his convictions for Voluntary Man-

slaughter, a class B felony (IND.CODE 35–42–1–3), Theft, a class D felony (IC 35–43–4–2), and Confinement, a class D felony (IC 35–42–3–3).[1]

We affirm.

Schick raises the following restated and renumbered issues:

1. whether the trial court erred in admitting Schick's confession,

2. whether Schick's conviction for confinement was erroneous,

3. whether an instruction given by the trial court erroneously shifted the burden of proof,

4. whether the trial court erroneously enhanced Schick's sentence,

5. whether Schick was provided with effective assistance of counsel.

On the evening of August 6, 1988, Schick and two friends drove around Lafayette, Indiana, and visited various locations to drink alcohol. Later in the evening, after separating from his friends, Schick entered the car of the victim, Stephen Lamie.

At approximately 2:30 a.m. on August 7, Schick knocked on the door of John R. and John P. Hamilton's (father and son, respectively) home. John P. answered the door and he and Schick went to his room. Schick went to a bedside table and deposited some money, cigarettes, and a watch in the drawer.[2] Schick then told John P. that he had been picked up by a man while hitchhiking and they discussed where they could find girls for sex. Schick said he then asked the man if he knew where he could get a "blow job" and the man replied "No, but I will." (R. 882). Schick then told John P. not to tell anyone and requested that he wake up his father.

After being awakened by his son, John R. observed Schick was nervous and that he had blood on his clothing. Schick told John R. he had met a man while hitchhiking and they had a discussion about girls and oral sex. He asked the man if he knew where he could get a "blow job". The man then offered to provide the service request-ed. Schick told John R. they went to a local high school baseball field and he tried to run away, but the man caught up to him, and a struggle ensued.

After Schick finished describing the night's events, John R., his son, and Schick got into John R.'s car and drove to the baseball field. Schick pointed out the victim's car and stated he had wiped the fingerprints off of it. He also stated he "hit that dude, kicked him, and beat his ass bad." (R. 1039). The trio did not get out of the car, but proceeded to Schick's home.

After taking Schick home, John R. made an anonymous phone call to the police to report that there was a dead or injured person on the baseball field. He later called the police and he and his son gave their statements. The police found a body at the baseball field and identified it as Lamie.

Schick was arrested on the morning of August 7 and taken to the Tippecanoe County Jail. He was advised of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Because he was only seventeen, he was allowed to confer privately with his father. He then requested that the police not ask any questions until he received assistance of counsel, and the police honored this request.

Because Schick was considered to be suicidal, he was detained in the juvenile visiting room instead of a cell. Barbara Lear, an employee of the Tippecanoe County Sheriff's Department, was assigned to stay with him. She observed that he was very upset. Lear asked him if he was "all right" and if he wanted her to get him a glass of water. (R. 1163). Schick told her he was nervous and wanted to talk to her about what had happened the night before. He then told her he was driving around on the night of the 6th and the early hours of the 7th because he was bored. His car broke down, so he decided to hitchhike. Eventually, Lamie picked him up and they drove around for awhile looking for girls.

---

1. This case was assigned to this office on November 30, 1990.

2. These items were later identified as belonging to Lamie.

After this search proved unsuccessful, Schick asked Lamie where he could get a "blow job" and Lamie stated he "could handle that". (R. 1168). The pair drove around some more, stopped at a convenience store for cigarettes, and proceeded to the baseball field.

Schick further told Lear that when they arrived at the baseball field, they got out of the car, and Lamie pulled off his shorts, pulled his underwear down to his ankles, grabbed Schick around the waist, and attempted to grab Schick's penis. Schick then kneed Lamie in the stomach and hit him in the face. When Lamie fell down, Schick stomped him with his feet. When he stopped kicking and hitting Lamie, he heard gurgling noises coming from Lamie's chest and throat area. He then took money from Lamie's wallet. The gurgling noises scared him, so he left and went to the Hamiltons' house.

Schick was charged with the following counts: Count I—murder, while attempting to commit a robbery; Count II—murder; Count III—robbery resulting in serious bodily injury; Count IV—confinement by fraud, enticement, force and threat of force from one place to another, resulting in serious bodily injury; and Count V—confinement by confining another without his consent, resulting in serious bodily injury. A jury found him not guilty of Count I, guilty of voluntary manslaughter (as an included offense of Count II, murder), guilty of theft (as an included offense of Count III), and guilty of confinement resulting in serious bodily injury, as alleged in Count IV.[3] At the sentencing hearing, the trial court granted defense counsel's request that the conviction for confinement resulting in serious bodily injury (a class B felony) be reduced to confinement with no bodily injury (a class D felony) because the injury inflicted merged with voluntary manslaughter. The trial court then sentenced Schick to consecutive sentences of twenty years for voluntary manslaughter, four years for theft, and four years for confinement.

Additional facts are set out below as necessary.

Schick contends the trial court committed fundamental error in admitting Lear's testimony regarding his statements while in detention. Schick relies on *Doerner v. State* (1986) Ind., 500 N.E.2d 1178, for the proposition that a confession obtained from an individual after the assertion of his right to counsel is not admissible at trial "in the absence of proof beyond a reasonable doubt that counsel was present or the right thereto was voluntarily and knowingly relinquished prior to the commencement of interrogation." 500 N.E.2d at 1180. Schick also cites *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, *reh. denied*, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984, for the proposition that a defendant's initiation of a dialogue with police does not suffice to show a valid waiver of the right to counsel, and valid waiver can only be ascertained if a separate inquiry is made.

� ▬▬ In order for a confession to be inadmissible, it must be the product of prohibited interrogation. In *Johnson v. State* (1978), 269 Ind. 370, 380 N.E.2d 1236, 1240, our supreme court defined interrogation as "a process of questioning by law enforcement officials which lends itself to obtaining incriminating statements." Under *Miranda*, the term "interrogation" refers to express questioning, and also to "any words and actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis* (1980), 446 U.S. 291, 100 S.Ct. 1682, 1689–1690, 64 L.Ed.2d 297. The concern of *Miranda* is that the " 'interrogation environment' created by the interplay of interrogation and custody would 'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimina-

---

**3.** The jury instruction in the record regarding Count IV has an "X" marked through it so it appears the jury was never instructed on the original Count IV. The original Count V became Count IV in the jury instruction.

tion." *Id.* (citing, *Miranda, supra*, 86 S.Ct. at 1619).[4]

■ In the present case, Lear merely inquired as to Schick's emotional state and need for water; she did not ask any other questions. The inquiry was not designed to elicit incriminating statements from Schick, nor was it the type of question which she should have known would elicit such a response. There is no evidence of any compelling influences which would have overcome Schick's will. There is no evidence whatsoever to indicate Schick's subsequent incriminating statements were not voluntarily initiated by him.

Schick, citing *Oregon v. Bradshaw* (1983), 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405, further contends there is no evidence indicating he knowingly and voluntarily waived his right to counsel. Schick also cites *Lewis v. State* (1972), 259 Ind. 431, 288 N.E.2d 138, 141, as authority that admissions and confessions of juveniles require special caution.

■ The answer to the question of whether Schick knowingly and intelligently waived his right to counsel and to silence is found in an examination of the totality of the circumstances, including the fact he confessed without being put through questioning by the police. *See, Bradshaw, supra,* 103 S.Ct. at 2835. Other facts and circumstances surrounding the case, including background, experience, and conduct of the accused, are also relevant. *Id.*

Even though he was only seventeen, Schick was no stranger to detention. In fact, he knew Lear from prior detentions in the same juvenile section of the jail where he was located at the time of his confession. There is no indication that the fear he professed was anything other than the knowledge his activities had placed him in a major predicament. He had not been threatened, nor were any promises or inducements to talk ever made. Most significantly, his confession was completely unsolicited; it was given without interrogation by Lear. There was no error in the admission of Lear's testimony, either fundamental or otherwise.

Schick next contends it was error to convict him of confinement as a class D felony. He contends the conviction was erroneous because the evidence was insufficient to establish the offense, and the jury was never instructed on the offense of confinement as a class D felony.

As noted above, Schick was originally charged with two counts of confinement—Count IV alleged Schick confined Lamie by fraud, enticement, force and threat of force from one place to another, resulting in serious bodily injury, and Count V alleged that Schick confined Lamie without Lamie's consent, resulting in serious bodily injury. Both of these counts allege class B felonies. The jury was instructed on only Count V, and found Schick guilty on the Count as charged. At defense counsel's request, however, the trial court sentenced Schick for confinement as a class D felony-confinement (without bodily injury)-because convicting Schick of voluntary manslaughter and confinement resulting in serious bodily injury would punish him twice for the same injury.[5]

■ Schick contends the jury failed to return a verdict on every count as a result of the trial court's failure to give instructions for each count. Accordingly, he cites *Wicks v. Lockhart* (E.D.Ark.1983), 569 F.Supp. 549, for the proposition that a verdict must be set aside when it is not appar-

---

**4.** In *Innis,* the police took the defendant into custody as a suspect in a murder. After receiving a *Miranda* advisement, he asserted his right to counsel. He was placed in a police car with three officers. Two of the officers expressed concern that neighborhood children would find the murder weapon and be hurt. Innis, who was listening to the conversation, then stated he knew where the murder weapon was. He was returned to the area of the crime and led the police officers to the gun.

The Supreme Court held the officer's conversation was not interrogation and the officers could not have known their conversation would evoke an incriminating response from Innis. 100 S.Ct. at 1690.

**5.** *See, King v. State* (1988), Ind., 517 N.E.2d 383, 385; *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 105–106.

ent what count the defendant was convicted under.

In *Wicks*, the defendant was charged with two counts of rape. Each count covered a separate act of rape. The jury found him guilty on only one count, but failed to specify which one. The district court reversed the conviction because it was impossible to determine for which rape Wicks was convicted. Here, the jury was instructed on only one act of confinement; the two original counts depicted the two original theories of the manner in which the confinement was accomplished. At the time the final instructions were given, the State proceeded on the theory originally contained in Count V. It is clear the jury returned a verdict on the count upon which they were instructed. Schick's argument that it is impossible to determine on which count he was found guilty fails.

█ Schick also argues the court should have set aside the jury verdict of confinement instead of reducing the conviction from a class B felony to a class D felony. He argues the reduction of the conviction was improper because it amounted to a conviction of a crime for which he was not charged.

Schick cites *Addis v. State* (1980), Ind. App., 404 N.E.2d 59, in support of his argument. Although the confinement statute was slightly different in *Addis*, it is substantially the same as the current version of IC 35–42–3–3, which provides in pertinent part:

A person who *knowingly* or *intentionally*:
(1) confines another person without the other person's consent; or
(2) removes another person, by fraud, enticement, force, or threat of force, from one (1) place to another;
commits criminal confinement, a class D felony. However, ... the offense is ... a Class B felony if it ... results in serious bodily injury to another person.

Addis was charged with nonconsensual confinement under subsection (1), but was

convicted for violating subsection (2). This court reversed the conviction, holding Addis could not be convicted of a crime with which she was not charged, even though the evidence was sufficient to support a conviction under another subsection of the statute.

Here, Schick was originally charged under both subsections of the confinement statute. However, it is clear from the record the jury was instructed on only nonconsensual confinement under subsection (1). The jury considered only this charge. Thus, unlike Addis, Schick was not convicted of a crime which was not charged. Furthermore, the fact the court reduced his conviction to confinement as a class D felony did not result in conviction for a crime not charged. Under IC 35–42–3–3, a person confining another person without that person's consent commits confinement, a class D felony. If in the process of committing the offense, the defendant causes serious bodily injury to the victim, then the offense can be classified as a class B felony. Schick was charged with confinement, and was convicted of confinement. The only difference between the original charge and the conviction was one of degree.[6]

█ Schick next contends the trial court erred in giving an instruction stating:

Intent to kill *may* be inferred from the beating of the victim by the defendant, resulting in death to the victim, even though the defendant may have used only his hands and feet in beating the victim.

(R. 148). (Emphasis supplied). Schick asserts the giving of this instruction was fundamental error because it weakened the State's burden of proof on the issue of intent. Schick relies on *Reid v. State* (1988), Ind., 529 N.E.2d 1309, wherein our supreme court held an instruction stating that "a person is presumed to intend the necessary or the natural and probable consequences of his actions knowingly performed" impermissibly shifted the burden of proof.

---

6. Schick's reliance on *Slayton v. State* (1984), Ind.App., 471 N.E.2d 1154, is misplaced. *Slayton* discusses lesser included offenses included in an information charging a greater offense. The case has nothing to do with a conviction for a lesser degree of the same offense.

The two instructions are clearly distinguishable. The instruction in *Reid* established a presumption which the defendant would have had to overcome. The instruction in this case merely informed the jury it could infer intent from Schick's use of his hands and feet upon the victim, it did not impermissibly establish a burden shifting presumption. The trial court did not err in giving the instruction.

Schick contends he was deprived of a fair sentencing hearing by the prosecutor's extrajudicial comments regarding his juvenile record, as well as by letters citing his record. He also complains of the court's exclusion of certain testimony in his behalf. He further contends the trial judge was impermissibly influenced by letters from local residents expressing dissatisfaction with the jury's verdict and urging the maximum sentence.

 Sentencing is a decision within the sound discretion of the trial court and will be reversed only if an abuse of discretion is shown. *Scruggs v. State* (1986), Ind., 489 N.E.2d 935, 938; *Warren v. State* (1984), Ind., 470 N.E.2d 342, 346. The imposition of consecutive sentences and the enhancement of a presumptive sentence are both decisions within the realm of the trial court's discretion. IC 35–50–1–2(a); IC 35–38–1–7; *Shippen v. State* (1985), Ind., 477 N.E.2d 903, 905. Even if only one aggravating factor is supported, it is enough to sustain an enhancement of the presumptive sentence. *Seeley v. State* (1987), Ind.App., 504 N.E.2d 309, 311.

In this case, there is nothing in the record to indicate the trial judge was in any way influenced by the letters disagreeing with the jury's verdict. Furthermore, there is no indication that the trial judge disagreed with the jury's verdicts.

 The court found Schick's violent nature and continued alcohol abuse to be aggravating factors warranting enhancement of the presumptive sentence. The court further found Schick's history indicated violence would again occur. Our supreme court has found a sentencing judge may refer to a juvenile record establishing that a defendant has a history of criminal conduct which would indicate a risk the pattern could continue. *Jordan v. State* (1987), Ind., 512 N.E.2d 407, 410, *reh. denied*, 516 N.E.2d 1054. Accordingly, the trial court did not commit error in considering the possibility of future violence based on Schick's prior history.

Furthermore, the court did not err in refusing to allow Schick to place two statements pertaining to the victim's alleged homosexuality into evidence. The State objected to admission of the statements because the witnesses were not available for cross-examination. Schick made no explanation at the hearing as to why the statements should be admitted when the witnesses were presumably available to testify. Likewise, Schick makes no explanation on appeal.[7]

Schick contends he was denied effective assistance of trial counsel. He cites *U.S. v. Cronic*, (1984), 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657, to support his assertion that trial counsel failed to "require the prosecution's case to survive the crucible of meaningful adversarial testing."[8] Thus, Schick posits his trial counsel's performance rendered the adversarial process "presumptively unreliable."[9]

In *Cronic*, the Supreme Court was faced with the question of whether the defendant was effectively denied the right to counsel when the trial court gave his appointed counsel, who had no prior trial experience, only twenty-five days to prepare for trial, when it took the Government over four years to investigate the case and get ready for trial. Cronic was convicted at the dis-

---

7. Schick implies the court unfairly admitted letters referring to the writers' disbelief at the jury verdict, while refusing to admit statements in his behalf. The record shows the letters were all of similar content concerning the jury's verdicts, and representative witnesses testified as to their opinions on the verdicts. Schick offered no testimony regarding the victim's alleged homosexuality, and made no effort to show why the witnesses could not appear.

8. Schick quotes from *Cronic, supra*, 104 S.Ct. at 2045.

9. *See, Cronic, supra*, at 2047.

trict court level, but the Court of Appeals reversed on the basis that denial of counsel was readily apparent, and Cronic did not need to show specific error or prejudice. The Supreme Court ultimately reversed the Court of Appeals decision on the basis the record did not present facts which would *per se* require a finding of ineffective assistance of counsel.

In discussing the requirements of the Sixth Amendment of the United States Constitution, the Supreme Court in *Cronic* stated the "special value of the right to the assistance of counsel explains why '[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel.'" 104 S.Ct. at 2044 (quoting *McMann v. Richardson* (1970), 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763). Accordingly, "the adversarial process protected by the Sixth Amendment requires that the accused have 'counsel acting in the role of the advocate.'" *Id.*, at 2045 (quoting *Anders v. California* (1967), 386 U.S. 738, 743, 87 S.Ct. 1396, 1399, 18 L.Ed.2d 493). "The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *Id.* The court then stated the adversary process is presumptively unreliable if counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.*, at 2047.

■ Here, the State brought its case against Schick on the theory he confined, and then murdered, Lamie while in the process of robbing him. In support of its case, the State presented physical evidence, as well as Schick's statements to John R., John P., and Lear.

Contrary to appellate counsel's opinion, trial counsel did not roll over and let the State proceed without opposition. Notwithstanding the confessions, he set out to prove that Schick did not murder Lamie while in the act of robbing him. Defense counsel argued that even though Schick unquestionably caused Lamie's death, he could only be found guilty of the lesser included offenses of voluntary manslaughter and theft. The jury agreed, refusing to find Schick guilty of murder or robbery. Instead, it found him guilty of the lesser included offenses.

Schick further contends defense counsel's strategy constituted reversible error because it amounted to a prohibited confession of guilt to the lesser offenses. Schick primarily relies on *People v. Hattery* (1985), 109 Ill.2d 449, 94 Ill.Dec. 514, 488 N.E.2d 513, *cert. denied,* (1986), 478 U.S. 1013, 106 S.Ct. 3314, 92 L.Ed.2d 727.

In *Hattery*, trial counsel made an unequivocal concession to a murder charge, the only charge brought against the defendant. In addition, trial counsel stated the defendant should be found eligible for the death penalty, relieving the jury from that decision as well. Throughout the guilt-innocence phase of the trial, counsel advanced no theory of defense, presented no evidence, made no closing argument, and made no attempt to hold the State to its burden of proof. The court held defense counsel's representation did not subject the prosecution's case "to the meaningful adversarial testing" required by the Sixth Amendment, and granted a new trial regardless of the overwhelming proof against the defendant. *Id.*, 94 Ill.Dec. at 519, 488 N.E.2d at 518 (citing *Cronic, supra,* at 2045).

Four years after *Hattery* the Illinois Supreme Court was faced with a similar case. In *People v. Johnson* (1989), 128 Ill.2d 253, 131 Ill.Dec. 562, 538 N.E.2d 1118, the defendant was charged with multiple offenses, including felony murder, murder, attempted murder, and armed robbery, resulting from an incident in which the defendant shot three co-workers. As a matter of strategy, trial counsel conceded guilt to the murder of one of the victims. The defendant did not testify in his behalf, but defense counsel strongly disputed the robbery and felony murder charges. The court refused to hold that Johnson *per se* received ineffective assistance of counsel in view of the overwhelming evidence and the strong defense to the other charges. The court noted that the *Cronic* presumption is applicable only when counsel *entirely* fails

to subject the prosecution's case to adversarial testing. *Id.*, 131 Ill.Dec. at 567, 538 N.E.2d at 1123 (citing *Cronic, supra*). The court also noted that *Hattery* should be narrowly construed. *Id.*

The present case is not governed by *Hattery*, especially in light of *Johnson.* Here, trial counsel did not concede guilt on all the charges. He forced the State to prove its murder and robbery charges. Thus, he put the State's primary charges to a meaningful adversarial test.[10] The fact that trial counsel concurred with the State's charge of confinement does not render *Johnson* inapplicable. In *Johnson*, trial counsel conceded to a much more grievous charge. *See, People v. Horton* (1990), 193 Ill.App.3d 695, 140 Ill.Dec. 498, 504–505, 549 N.E.2d 1370, 1376–1377.

We disagree with the dissent regarding the availability of the defense of intoxication. In *Montgomery v. State* (1988), Ind., 521 N.E.2d 1306, *reh. denied, cert. denied*, 488 U.S. 840, 109 S.Ct. 108, 102 L.Ed.2d 83, our supreme court held counsel is not ineffective when he chooses not to raise the defense of intoxication where the defense is doomed to failure because the evidence shows the defendant had a lucid recollection of what happened and was capable of taking steps to cover up the crime. Here, Schick recounted the events of the evening and the morning to at least three persons, and his recollection of his assault against Lamie was very detailed. Furthermore, he took the specific step of wiping his fingerprints off of Lamie's car to cover up his involvement in the crime.

We further disagree with the dissent concerning whether the evidence raised the possibility of presenting an issue of self-defense. In his confession to Lear, Schick stated Lamie approached him with his underwear down around his ankles, grabbed his waist, and attempted to grab his penis. He further stated Lamie was small in stature and never attempted to

fight with him. It is impossible to accept Schick's incredible contention that he believed himself to be in danger from a small man stumbling about with his ankles bound by his own underwear. This is especially true in light of Schick's observation that Lamie never fought with him. Self-defense is not available when the fear of imminent threat is not objectively reasonable. *Whipple v. State* (1988), Ind., 523 N.E.2d 1363, 1367. Furthermore, unrealistic defenses need not be pursued by trial counsel. *Miller v. State* (1989), 543 N.E.2d 639, 640; *Wilson v. State* (1991), Ind.App., 565 N.E.2d 761, 765.

Schick places great importance on still another version of the evidence related to a psychiatrist after the trial, and also contained in a post-trial statement. In this version, Schick stated Lamie knocked him unconscious. Schick also stated that when he awoke Lamie was trying to force his penis into his mouth, and he was forced to fight to avoid the sexual attack. He eventually broke free, and as Lamie stumbled toward him with his underwear around his ankles, Schick knocked him down. As Lamie lay on the ground, Schick beat and kicked him to death.

Even if we assume this version of the evidence was not a post-trial fabrication, and was related to trial counsel before trial, we cannot find error on the part of trial counsel in not presenting self-defense to the jury. In order for this version to be presented to the jury, trial counsel would have had to put Schick on the stand to contradict prior versions in which he indicated that Lamie never fought with him. Counsel did not want to put Schick on the stand because of the danger of Schick showing his explosive temper to the jury, thereby negating any defense to the murder charge. (R. 750). Further, since Lamie was kicked and beaten to death after being knocked to the ground, this version of the facts does not establish Schick was

---

10. The fact that trial counsel's strategy resulted in victory is, by itself, irrelevant under *Hattery* and *Johnson.* The key inquiry is whether the State's case was put to an adversarial test. Since trial counsel did put the State's charges to an adversarial test, his strategy would have been proper even if it resulted in defeat.

in fear for his life at the time the fatal blows were struck. *See, Whipple, supra.*

Schick next cites to specific alleged errors he contends rendered trial counsel's assistance ineffective under *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. We now address all issues not already covered by our previous discussion.

In *Strickland,* the United States Supreme Court stated:

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

104 S.Ct. at 2064.

 The purpose of the effective assistance guarantee of the Sixth Amendment is to ensure criminal defendants receive a fair trial. *Id.,* at 2065. Error of counsel does not warrant the setting aside of a judgment if the error had no effect on the judgment. *Id.,* at 2066. The defendant must show there was a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.,* at 2068.

 There is a strong presumption that trial counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions. This presumption is overcome only by strong and convincing evidence. *Terry v. State* (1984), Ind., 465 N.E.2d 1085, 1089.

 Schick contends trial counsel was ineffective in requesting the jury to find him guilty of confinement as a class B felony, and then asking the court to reduce it to a class D felony. Schick contends it was error not to request the confinement charge be dropped completely as a matter of double jeopardy.

In light of the fact the trial court reduced the confinement conviction to a class D felony, Schick has not shown how he was prejudiced by trial counsel's belated realization that a defendant cannot be punished twice for the same injury. Furthermore, he misreads *King, supra,* and *Flowers, supra,* to require acquittal on the charge of confinement as a class D felony. These cases do not hold that double jeopardy prevents a defendant from being convicted of both voluntary manslaughter and confinement without bodily injury.[11]

 Schick reasons he could not, on double jeopardy principles, have been convicted of the offenses of voluntary manslaughter and robbery resulting in serious bodily injury. He further reasons that absent an instruction on the lesser included offense of theft he could not have been convicted of that offense. Therefore, he concludes trial counsel's offer of an instruction on the offense of theft constituted ineffective assistance of counsel.

Schick's argument suffers from the same defect as his argument above. It erroneously assumes he could not have been convicted of robbery without the enhancement for bodily injury. *See, Mitchell v. State* (1989), Ind., 541 N.E.2d 265, 271.[12] Trial

---

11. Even if error had been committed, we observe that as a general rule error invited by the complaining party is not reversible error. *Amburn v. State* (1990), Ind.App., 550 N.E.2d 762, 764.

12. In *Mitchell,* our supreme court held a conviction for robbery resulting in serious bodily injury must be reduced to class C robbery because double jeopardy prevents convictions for both murder and the enhanced offense of robbery.

counsel's decision to submit an instruction on the lesser included offense of theft was an acceptable, and successful, trial tactic.

■ Two police officers testified without objection that Schick was given his *Miranda* warnings, consulted with his father, and exercised his right to remain silent. Schick contends trial counsel rendered ineffective assistance when he did not object to references to his right to silence. Schick states the knowledge that reference cannot be made to the exercise of this right is so basic that failure to object is error.

Schick makes no showing of how he was prejudiced by trial counsel's failure to object. Accordingly, he has not proven ineffective assistance of counsel under *Strickland, supra.*

■ Schick contends trial counsel was ineffective in not calling him as a witness. Schick acknowledges he agreed with trial counsel's advice not to testify, but cites *U.S. v. Butts* (D.Me.1986), 630 F.Supp. 1145, as authority that we should find his will was overcome by trial counsel.

The facts of this case are distinguishable from those in *Butts.* Reversible error was committed by Butts' counsel because, while they were both seated in the plain view of the jury, he advised Butts for the first time that he would not testify. "Burdinik [Butts' attorney] did not ask for a recess or do anything else that might have facilitated a more meaningful discussion with his client." *Id.,* at 1146. Butts' attorney maneuvered the situation so that any protest would have resulted in a scene before the jury. Accordingly, Butts had no option but to agree with his attorney's strategy.

Here, Schick and his attorney engaged in a discussion outside the presence of the jury, and Schick decided, albeit reluctantly, to forego testifying. Defense counsel was willing to put Schick on the stand if he chose to ignore counsel's advice. Schick's decision was not a result of his attorney's

stronger will. The fact that he previously wanted to testify does not render his subsequent decision to forego testifying suspect under the facts of this case.

■ Schick contends trial counsel provided ineffective assistance of counsel in not proposing instructions on the lesser included offenses of Involuntary Manslaughter and Reckless Homicide. Schick contends that if instructions on these offenses were offered the jury may not have found him guilty of the greater offense of voluntary manslaughter.

Trial counsel did not overlook this issue. He specifically considered whether a "defense" of involuntary manslaughter was applicable. After consideration, he concluded it would not be an appropriate "defense" because the extent and manner of the multiple and massive injuries inflicted against Lamie, who never resisted or fought back, suggested they were intentionally inflicted to cause death. Under these circumstances, we do not consider Schick's prediction as to the effectiveness of these instructions to be strong and convincing evidence which would overcome the presumption that trial counsel provided effective assistance of counsel.

■ Schick also contends trial counsel was ineffective because he did not challenge the court's motion *in limine* prohibiting references to Lamie's alleged homosexuality, nor make an offer of proof regarding Lamie's sexual conduct. Schick contends this evidence was relevant to whether he was attempting to rob Lamie and whether he was sexually attacked. However, given the jury's verdicts, it is apparent that no prejudice occurred.

■ Finally, Schick contends defense counsel was ineffective because he did not allow Schick's father to testify. Schick contends his father could have given specific testimony negating the State's murder and robbery theories.[13]

---

The court did not hold that the robbery charge must be thrown out completely.

**13.** Schick also contends his father could have given testimony refuting other aspects of the

State's case. Since he does not provide specific examples of this testimony, we cannot find trial counsel was ineffective in making the strategic decision not to put Schick's father on the stand. This is especially true in light of trial counsel's

Again, Schick shows no prejudice under *Strickland*. The jury did not accept the State's theory of robbery.[14]

Affirmed.

MILLER, J. dissents with separate opinion.

HOFFMAN, J., concurs.

MILLER, Judge, dissenting.

I dissent. The issue here is not whether a competent attorney could have vigorously defended Schick to obtain a lesser sentence. Rather, the issue is at what point the trial lost its character as a meaningful adversarial proceeding when counsel admitted his client's guilt on several major counts. Here, instead of assuring that Schick's case would be subject to a meaningful adversarial test at which the State was required to prove the defendant's guilt beyond a reasonable doubt, Schick's counsel admitted guilt on several of the charged offenses.

In his opening comments, counsel stated: "We're asking you to look at the totality of the circumstances here to see what we have seen all along. *That this man did wrong, he deserves our condemnation, and I'm inviting you to do so by returning a verdict of voluntary manslaughter.*

\* \* \* \* \* \*

"If there is ever a case where voluntary manslaughter is appropriate, it is this case, ladies and gentlemen. I look forward to working with you the next few days, and I trust you will agree with me that *my client is guilty of voluntary manslaughter.*"

(R. 780–81, emphasis supplied). In his closing argument, counsel stated:

"*Mr. Sells is right, we agree that my client knowingly and intentionally killed Stephen Lamie on August 7th.* I told you that at the beginning, and I'm

belief that the father's testimony would only be cumulative.

**14.** In sum, Schick's incompetence of counsel issue fails on all counts. Obviously, his trial counsel was not only competent, he defended

telling you here again at the end. What divides us are really two things here. One is, was the dominant motive, was the real motive that was driving Tim Schick that night robbery, that's one; and secondly, *why was it that he killed Steve Lamie,* and I intend to show you the facts as we have heard them from this witness stand that demonstrate to me and I think ought to demonstrate to you that the proper verdict in this case would be *guilty of Count IV, knowingly or intentionally confining Steve Lamie without his consent, resulting in serious bodily injury, that's true. As to Count II right above Count IV there, knowingly and intentionally killing Steve Lamie, that's true, plus under sudden heat.*

\* \* \* \* \* \*

"We started this trial and I told you, that my client, Tim Schick was guilty of voluntary manslaughter.... You've seen the ferocity of what happened to Steven Lamie, and now you know why, and *I'm not asking you to excuse Tim for what he did, never have and never will. I'm asking you to convict him of what he did, I'm asking you to convict him of voluntary manslaughter and of theft.*"

(R. 1306–15, emphasis supplied).

The majority finds that counsel's actions were tactically proper because they gave the jury the option of convicting Schick on lesser offenses. However, when counsel's statements are analyzed in light of the offenses with which Schick was charged, it is obvious that counsel went far beyond admitting to a few minor crimes.

First, Schick was charged with the following offenses:

1) felony murder (found not guilty);

2) murder (presumptive sentence of forty years and a possible sentence of sixty);

Schick with great skill and ability at trial. As a direct result of trial counsel's efforts, Schick was convicted of voluntary manslaughter, not murder, a remarkable accomplishment under the facts of this case.

3) robbery resulting in serious bodily injury, a Class A felony (presumptive sentence of thirty years and possible sentence of fifty years);

4) confinement by fraud, enticement, force and threat of force from one place to another, resulting in serious bodily injury, a Class B felony (presumptive sentence of ten years, possible sentence of twenty years); and

5) confinement by confining another without his consent, resulting in serious bodily injury, also a class B felony.

These are the charges to which counsel admitted:

1) killing Lamie intentionally under sudden heat (involuntary manslaughter as included in the murder charge, a class B felony);

2) confinement resulting in serious bodily injury, a Class B felony; and

3) theft, a Class D felony.

What the majority ignores, however, is that counsel also admitted to all the elements of robbery, a Class A felony, by admitting Schick attacked Lamie, that he stole Lamie's property, and that serious bodily injury occurred. Thus, although counsel's admissions appear to be an attempt to obtain a lesser sentence for Schick, counsel put Schick in jeopardy of being convicted of a Class A felony with a presumptive sentence of thirty years and a possible sentence of fifty—only slightly less than the sentencing possibilities for murder.

I also observe that counsel stated Schick was guilty of confinement with serious bodily injury and of voluntary manslaughter. We all agree with the trial court that these offenses merged. Thus, counsel's admissions—and not the jury verdict—placed Schick in double jeopardy.

The majority rests its decision that counsel engaged in proper trial strategy on an examination of the evidence to determine whether Schick could have been convicted of greater offenses than he was. Whether or not counsel was effective in this case and under these facts is not dependant on the examination of the evidence to determine whether a good result was reached. Rather, the question, in my opinion, is whether counsel battled on behalf of his client—regardless of what result was ultimately achieved.

In this case, if Schick had been convicted of murder, would the majority hold—based on its conclusion in this case—that counsel was ineffective because his strategy did not result in a conviction of a lesser offense? My opinion of whether an attorney concedes too much on behalf of his client is not dependant on the result. For instance, if the jury had ignored the evidence (as well as counsel's requests to convict Schick), and acquitted Schick, my opinion as to counsel's actions would not change. Similarly, if Schick had been found guilty of murder, my opinion would not change.

I am not saying here that counsel must ignore the evidence presented by the State when making opening and closing statements to the jury. Counsel could have stated that there was no evidence of murder and, although there might have been some evidence of voluntary manslaughter, that the evidence did not prove guilt beyond a reasonable doubt. Further, counsel could have pointed out that there was no evidence of confinement because Lamie and Schick were in Lamie's car which Lamie drove, and there was no evidence of how the two ended up on the baseball diamond. Counsel could have also pointed out that Schick—a youth of seventeen—could have been offended and confused when approached by Lamie in what Schick perceived to be a sexual manner and felt the need to defend himself from such an attack. Finally, counsel could have pointed out that Schick was too drunk to form the intent to commit the crimes.

The majority states that "counsel defended Schick with great skill and ability at trial." At 930, note 14. However, I cannot see how counsel's defense was anything but ineffective. Not only did counsel make substantial admissions of Schick's guilt, he failed to present a vigorous defense on behalf of Schick. In fact, the only defense presented on Schick's behalf was that the circumstances surrounding Lamie's death were not consistent with a simple robbery but that a sexual encounter was likely in-

volved. However, Lamie approached Schick in a sexual manner, which could have easily made this seventeen year-old youth think that he was in danger at the time, raising the issue of self-defense.

The evidence also shows that Schick had been drinking heavily the evening and morning before the incident. Daniel Cotton testified that he, Schick and another boy drank whiskey, schnapps, and beer that night. John R. and John P. Hamilton both testified Schick was intoxicated when he came to their house that morning. I am not saying that counsel should be considered ineffective in all cases for failing to raise a defense of intoxication when there is evidence the defendant had been drinking. Rather, I am pointing out that counsel's concessions of guilt coupled with his failure to at least raise the available defenses does not amount to competent representation.

I agree with the majority that *People v. Hattery* (1985), 109 Ill.2d 449, 94 Ill.Dec. 514, 488 N.E.2d 513, is not controlling here. However, I disagree with the majority's reliance on *People v. Johnson* (1989), 128 Ill.2d 253, 538 N.E.2d 1118. Johnson was charged with one count of intentional murder, two counts of knowing murder, three counts of felony murder, two counts of attempted murder, seven counts of armed violence, four counts of aggravated battery, three counts of armed robbery, and one count of unlawful restraint. The charges stemmed from an incident in which one man was killed, two men were wounded and personal property was taken from the victims. The defendant pled not guilty to all of the charges. During trial, the State presented the testimony of two of the victims and a written statement given by the defendant after he was arrested admitting to the crimes. During his opening statement, Johnson's attorney admitted that his client committed murder as charged, but argued Johnson did not commit murder while committing a felony. Though defense counsel did not present evidence on Johnson's behalf, he was able to elicit testimony tending to show that the defendant did not intend to rob any of the victims before he shot them. Thus, the defense strategy was to show the State could not prove beyond a reasonable doubt Johnson murdered the victim while committing a felony. On appeal, Johnson argued that, under *Hattery*, ineffective assistance of counsel is established whenever counsel concedes defendant's guilt to the main offense even though the defendant chooses to plead not guilty to all offenses. The court declined to apply such a broad reading of *Hattery* and held that in some situations, an admission of guilt to one of the crimes charged, coupled with vigorous defense of the other charges did not automatically make counsel ineffective, especially in light of the overwhelming evidence of Johnson's guilt.

The overwhelming evidence presented in *Johnson* was the testimony of two victims—eye witnesses to the crime—and a written statement by the defendant admitting to the crimes. In the case before us however, the evidence is not so overwhelming. And, as pointed out earlier, there is at least some evidence of the possible defenses of voluntary intoxication or self-defense.

I also find counsel's admissions to Schick's guilt amounted to a confession on behalf of Schick without the procedural safeguards normally afforded a criminal defendant who decides to plead guilty. The consequences of a plea of guilty in criminal proceedings cannot be underestimated. As the Supreme Court stated in *Boykin v. Alabama:*

"A plea of guilt is more than a confession which admits that the accused did various acts; *it is itself a conviction; nothing remains but to give judgment and determine punishment.*"

*Boykin v. Alabama* (1969), 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274. For this reason, the defendant is provided procedural safeguards before the court may accept a guilty plea. Ind.Code 35–35–1–2 [1] provides several such safeguards, none of which were provided to Schick in this case. The most basic of these safeguards is that the decision to plead guilty is the defendant's alone. *Abraham v.*

---

**1.** IC 35–35–1–2 provides:

(a) The court shall not accept a plea of guilty or guilty but mentally ill at the time of the crime without first determining that the defendant:

*State* (1950), 228 Ind. 179, 91 N.E.2d 358; *Lyles v. State* (1978), 178 Ind.App. 398, 382 N.E.2d 991. This decision must be based on an intelligent and voluntary choice. *Boykin, supra.* It is the function of the trial court to determine whether the defendant fully understands what the consequences of the plea are and to make a record of that for review. *Id.* Likewise, the record must reflect that the defendant unequivocally understands the consequences of a plea made by his attorney. *Wiley v. Sowders* (6th Cir.1981), 647 F.2d 642, *cert. denied,* 454 U.S. 1091, 102 S.Ct. 656, 70 L.Ed.2d 630. Here, there is nothing in the record to indicate that Schick voluntarily and intelligently made the decision to plead guilty to any crime. Nor is there anything in the record to show that Schick understood the consequences of admissions of guilt made by his attorney. I cannot, therefore, agree with the majority that Schick's counsel merely employed legitimate trial strategy.

In *Abraham, supra,* our supreme court stated:

"An accused has the right to elect to whether he will stand trial or plead guilty. If he elects to stand trial his counsel should vigorously present every legal defense and represent him with the utmost skill and ability. Anything short of this is not adequate, competent or effective representation by counsel which the constitution commands shall be afforded."

*Id.* 128 Ind. at 185, 91 N.E.2d at 369. Schick elected to stand trial. Once he made that decision, he had the right to have every legal defense presented to the jury. Counsel's approach—in effect pleading guilty on Schick's behalf—left Schick without a defense. Thus, if the majority's

(1) understands the nature of the charge against him;
(2) has been informed that by his plea he waives his rights to:
 (A) a public and speedy trial by jury;
 (B) confront and cross-examine the witnesses against him;
 (C) have compulsory process for obtaining witnesses in his favor; and
 (D) require the state to prove his guilt beyond a reasonable doubt at trial at which the defendant may not be compelled to testify against himself;

opinion were to stand, it would deny Schick that very right which, in the words of our supreme court, "the constitution commands shall be afforded." *Id.*

I also find that Schick was improperly convicted of both voluntary manslaughter and confinement. Schick was convicted of confining Lamie without his consent. However, the confinement of the victim here was no longer than that necessary to commit the voluntary manslaughter of which Schick was convicted. Thus, it was improper to sentence Schick for voluntary manslaughter and confinement. In *Ryle v. State* (1990), Ind.App., 549 N.E.2d 81, Judge Shields explained that the element of force necessary to establish robbery constitutes the crime of confinement because the force required for robbery involves a substantial interference with a person's liberty, which is required for confinement. Thus, when a robbery is committed by the use or threat of the use of force, confinement—by virtue of the use of force—also occurs. However, only when the confinement of the victim continues beyond that inherent in the force used to effectuate the robbery will a violation of the confinement statute have occurred. *Id.* Judge Shields used the crime of forcible rape to further illustrate this point:

"Similarly, forcible rape necessarily includes an interference with the victim's liberty in order to achieve non-consensual penetration. That interference, like the interference in the robbery, is inherently included in forcible rape and cannot support a conviction. However, any confinement of the victim other than that necessary to effectuate the rape constitutes a separate violation of IC 35-42-3-3(a)(1) and a distinct, punishable offense.

*Id.* at 85, note 7.

(3) has been informed of the maximum possible sentence and minimum sentence for the crime charged and any possible increased sentence by reason of the fact of a prior conviction or convictions, and any possibility of the imposition of consecutive sentences; and
(4) has been informed that if:
 (A) there is a plea agreement as defined by IC 35-35-3-1; and
 (B) the court accepts the plea; the court is bound by the terms of the plea agreement.

The same reasoning applies here. By using force, Schick confined Lamie. However, there is no evidence that the confinement occurred at any other time or went beyond that necessary to effectuate the manslaughter. Thus, a separate violation of the confinement statute did not occur and Schick was improperly sentenced for that crime.