**2016 UT App 248**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
SANTIAGO AVILA APONTE,
Appellant.

Memorandum Decision
No. 20150154-CA
Filed December 22, 2016

Fourth District Court, Provo Department
The Honorable Samuel D. McVey
No. 141400333

Jennifer Gowans Vandenberg and Emily Adams,
Attorneys for Appellant

Sean D. Reyes and Daniel W. Boyer, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Memorandum Decision,
in which JUDGES MICHELE M. CHRISTIANSEN and DAVID N.
MORTENSEN concurred.

ORME, Judge:

¶1     Santiago Avila Aponte (Defendant) appeals his convictions for failure to respond to an officer's signal to stop, a third degree felony, *see* Utah Code Ann. § 41-6a-210 (LexisNexis 2010); failure to stop at an accident involving injury, a class A misdemeanor, *see id.* § 41-6a-401.3; reckless driving, a class B misdemeanor, *see id.* § 41-6a-528; and driving on a suspended or revoked operator's license, a class C misdemeanor, *see id.* § 53-3-227. Defendant challenges his convictions, arguing that the trial court erroneously admitted eyewitness and character evidence. We affirm.

¶2  One evening in August 2013, a police officer attempted to pull over a Chevrolet Impala, which had been reported as stolen.[1] The driver did not slow down but instead accelerated and attempted to evade the officer. After the driver ignored a stop sign, sped through a busy intersection, and reached speeds of over seventy-five miles per hour—forty miles per hour over the posted speed limit—the officer abandoned his pursuit in the interest of public safety.

¶3  Shortly thereafter, the officer received a report that the Impala had crashed at a nearby, well-lit gas station. Witnesses reported that the car hit a curb, soared through the air, and crashed into a cement column that protected a series of gas pumps. The driver wrestled with the airbag, and because his door was damaged in the crash, climbed out through his window "Dukes of Hazzard style," as one witness put it. He then fled on foot, scaling an eight-foot fence in the process.

¶4  An injured passenger remained inside the Impala. She identified Defendant, by name, as the driver of the Impala and described him. Using that information, officers retrieved a digital photograph of Defendant from an online source. Officers showed the photograph to two witnesses of the crash, and both confirmed the passenger's identification of Defendant.[2]

¶5  Defendant was eventually caught, arrested, and charged with multiple offenses. Before trial, Defendant filed a motion to

---

1. "On appeal, we recite the facts in the light most favorable to the jury's verdict." *State v. Martinez*, 2013 UT App 154, ¶ 2 n.1, 304 P.3d 110 (citation and internal quotation marks omitted).

2. Ten months later, officers created a photo array that contained photographs of five other individuals and a different photograph of Defendant. Both witnesses again confirmed Defendant as the driver.

suppress, challenging the reliability of the eyewitness identifications. Following a suppression hearing, the trial court denied Defendant's motion. Later, the State filed notice of its intent to introduce two of Defendant's other convictions into evidence, both of which involved fleeing from pursuing police officers.[3] Following oral argument, the trial court ruled that the evidence was admissible under the doctrine of chances and to show intent, knowledge, and absence of mistake.[4]

¶6      Defendant did not appear for his trial as scheduled. He was, however, tried in absentia. After hearing testimony from the passenger, both eyewitnesses, and the pursuing officer, as well as evidence of Defendant's two other attempts to flee from the police and his resulting convictions, the jury convicted Defendant on the counts set forth in the first paragraph of this decision. *See supra* ¶ 1. The trial court sentenced Defendant to prison. Defendant appeals the admission of the eyewitnesses' testimony and the evidence of his prior convictions.

---

3. In September 2012, an officer attempted to stop Defendant for driving eighty miles per hour in a forty-mile-per-hour zone. But Defendant did not stop after the officer activated his lights and sirens. Instead, Defendant ran two red lights and a stop sign. He eventually crashed and attempted to flee on foot. In October 2013, two months after the crash in this case, an officer approached Defendant's vehicle to inquire about an assault. Defendant rolled up his window and sped off. The officer terminated that pursuit for the public's safety. By the time of trial in this case, Defendant had pled no contest to reckless driving, speeding, DUI, and two counts of attempted failure to respond to an officer's signal to stop.

4. At trial, the court instructed the jury that it could not consider the evidence "to prove the character trait of the defendant or to show that he acted in a manner consistent with such a trait."

## I. Eyewitness Testimony

¶7 Defendant argues that the trial court violated his due process rights by admitting "unnecessarily suggestive" eyewitness identification evidence.[5] Whether eyewitness identification evidence is reliable is "a question of law, which we review for correctness." *State v. Hubbard*, 2002 UT 45, ¶ 22, 48 P.3d 953. "We apply this same standard of review to both the federal and the state analyses." *Id.*

¶8 The United States Supreme Court has recognized "a due process check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). The admissibility of traditional identification testimony under the United States Constitution requires a two-step inquiry. *See Neil v. Biggers*, 409 U.S. 188, 196–99 (1972).

¶9 The court first determines whether the identification was the product of "unnecessarily suggestive" law enforcement procedures. *Perry*, 565 U.S. at 239–40. If identification procedures were neither "suggestive [nor] unnecessary," due process has not been violated. *Id.* at 238–39. But if the identification process involved "unnecessarily suggestive" conduct, we proceed to the second step and must determine, under the totality of the circumstances, whether the identification was reliable. *See Neil*, 409 U.S. at 199.

---

5. Defendant asserts his due process rights under only the United States Constitution, despite the Utah Constitution requiring "a more stringent standard in making reliability determinations than that employed in the federal system." *State v. Lujan*, 2015 UT App 199, ¶ 10, 357 P.3d 20, *cert. granted*, 364 P.3d 48 (Utah 2015).

¶10   The parties debate the criteria—both federal and state—that apply to the eyewitness identification evidence in this case.[6] Both lines of jurisprudence, as far as we can tell, involve cases in which officers allegedly employed suggestive techniques in the course of the initial identification of a suspect. Suggestive circumstances with the initial identifier are problematic because they increase "the likelihood of misidentification." *Id.* at 198, 201. Indeed, it is the likelihood of misidentification that implicates a defendant's right to due process. *Id.* at 198.

¶11   But this case does not implicate the paradigmatic concerns about misidentification. Rather, needing to apprehend a fugitive, and hoping to dispel any possibility that the passenger's identification of the driver was deliberately misleading or otherwise inaccurate, the officers used the photograph only for the limited purpose of confirming the accuracy of an identification already made by someone who should have known the driver's identity, but who also may have had a motive to misstate his identity to protect him. In essence, the uninvolved eyewitnesses were performing a merely confirmatory role. The passenger knew Defendant and provided officers with Defendant's name and an accurate description of him.[7] Ancillary efforts that the officers took to allay any concern

---

6. Contrary to our observation in footnote 5, the State maintains that the Due Process Clause of the Utah Constitution parallels the two-step inquiry of the United States Constitution. Because Defendant has not asserted that his state constitutional rights were violated, we have no occasion to consider the issue. In any event, the Utah Supreme Court has granted certiorari in the *Lujan* case, and this question may be answered in the course of its resolution. *See State v. Lujan*, 2015 UT App 199, 357 P.3d 20, *cert. granted*, 364 P.3d 48 (Utah 2015).

7. At trial, the passenger testified that, at the time of the crash, she had been friends with Defendant for a "couple months."

that the passenger was not forthright in her report do not undermine the reliability of the passenger's initial identification.[8]

¶12   Defendant has not pointed us to any judicial decision that involves facts like these but that requires the confirmatory identifications made by other witnesses, after a suspect has already been reliably identified, to pass the rigors of due process analysis as though no such prior identification had been made.[9]

---

8. Defendant asserts that the passenger was not a reliable witness. In support, he points to her prior convictions—including one for giving false information to a police officer—and the perception that she was under the influence of an unspecified narcotic when she identified Defendant. At the time of the passenger's trial testimony, however, she had already pled guilty to possession charges stemming from the same incident. She received nothing in exchange for her testimony. And at the time she identified Defendant at the scene, most of those credibility issues would not have been known to police. Had they been known, of course, it would only further validate the officers' intuition to corroborate the passenger's report as to the driver's identity by checking with other witnesses.

9. After oral argument, Defendant submitted a letter with, inter alia, citations to three cases "where the eyewitness was shown a single photo of the defendant to *confirm* the identity of the defendant rather than to *discover* it." These cases do not, however, parallel the unique reliability of the identification that occurred here. In each of the three cases, an initial witness *described* a suspect to an officer, who then furnished a picture of a particular individual, and the initial witnesses then "confirmed" the identification from a single photo of the suspect. *See Manson v. Brathwaite*, 432 U.S. 98, 101 (1977); *Wicks v. Lockhart*, 569 F. Supp. 549, 554 (E.D. Ark. 1983); *United States v. Brady*, No. 3:13-CR-23-06, 2013 WL 5674848, at *2–3 (N.D. W. Va. Oct. 17, 2013). In each of these cases, the eyewitness who confirmed the identity

(continued…)

Because an acquaintance of Defendant made the identification independent from any photograph, and because two witnesses merely confirmed that initial identification when shown a photograph, we conclude that the identification was not "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *See Simmons v. United States*, 390 U.S. 377, 384 (1968). Accordingly, under the totality of the circumstances, the identifications—especially the passenger's, which was based on her personal knowledge untainted by the suggestion of a photo—were reliable, and the trial court did not abuse its discretion in admitting the identifications into evidence.

## II. Prior Conviction Evidence

¶13    Defendant also complains that the jury "was not apprised of the legal meanings" of the noncharacter purposes for submitting prior conviction evidence in the limiting instruction

---

(…continued)

of the suspect was also the initial identifier. In such a situation, the danger of misidentification is high because, upon seeing a single photograph more or less matching the description given, witnesses often make positive identifications. *See Simmons v. United States*, 390 U.S. 377, 383 (1968). Reliability is further undermined if a witness "obtained only a brief glimpse of a criminal, or [saw] him under poor conditions." *Id.* In contrast, the initial identifier here was an acquaintance of Defendant, whose initial identification of Defendant was entirely independent of the photograph, based on her own familiarity with Defendant. Two witnesses, both of whom had unobstructed views of Defendant for significant amounts of time, then confirmed the passenger's identification. This was solid police work, as it foreclosed the possibility that police would arrest an innocent party, wrongly identified by the passenger, even as Defendant disappeared into the night.

the trial court provided and that the enumerated noncharacter purposes were not "legitimate bases for admitting the prior bad acts evidence."[10] We conclude that these issues are not properly before us.

¶14   "An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on [it]." *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (alteration in original) (citation and internal quotation marks omitted). *See* Utah R. App. P. 24(a)(5)(A)–(B). The preservation rule precludes review of any unpreserved claim "unless a defendant can demonstrate that exceptional circumstances exist or plain error occurred." *State v. Larrabee*, 2013 UT 70, ¶ 15, 321 P.3d 1136 (citation and internal quotation marks omitted).

¶15   Defendant's trial counsel did not object at any point to the limiting instruction given in contemplation of rule 404(b) of the Utah Rules of Evidence. Nor did Defendant object to the inclusion of the specified noncharacter purposes, including knowledge, opportunity, lack of mistake or accident, and the doctrine of chances.[11] Below, Defendant's sole objection was that

---

10. Defendant is mistaken in asserting that lack of mistake, accident, knowledge, or opportunity, and the doctrine of chances are not "legitimate bases for admitting the prior bad acts evidence." Rule 404(b) permits the admission of evidence for almost any purpose, so long as it was not offered to show that on a specific occasion the person acted in conformity with the particular character trait. *See* Utah R. Evid. 404(b); *State v. Verde*, 2012 UT 60, ¶ 15, 296 P.3d 673.

11. In Defendant's objection to the State's notice of rule 404(b) evidence, he conceded that the convictions were admissible to prove identity. If Defendant believed this to be the only

(continued…)

the probative value of the challenged character evidence was substantially outweighed by its unfair prejudice. While this argument was preserved, Defendant has not raised it on appeal, so we do not consider it. Conversely, Defendant's jury instruction arguments now pursued on appeal were not raised below, and because he has not raised the plain error or exceptional circumstances exceptions, we also decline to consider this issue.

¶16     Affirmed.

————————

(…continued)
permissible noncharacter purpose, he should have tailored his objection accordingly.